Case title: USA v. Maxwell                    Date Filed: 07/02/2020

Assigned to: Magistrate Judge Andrea K. Johnstone

**Defendant (1)**

**Ghislaine Maxwell**

| **Pending Counts** | **Disposition** |
| --- | --- |
| 18 U.S.C. 371 CONSPIRACY TO ENTICE MINORS TO TRAVEL TO ENGAGE IN ILLEGAL SEX ACTS (1) | |
| 18 U.S.C. 2422 and 2 ENTICEMENT OF A MINOR TO TRAVEL TO ENGAGE IN ILLEGAL SEX ACTS (2) | |
| 18 U.S.C. 371 CONSPIRACY TO TRANSPORT MINORS WITH INTENT TO ENGAGE IN CRIMINAL SEXUAL ACTIVITY (3) | |
| 18 U.S.C. 2423(a) and 2 TRANSPORTATION OF A MINOR WITH INTENT TO ENGAGE IN CRIMINAL SEXUAL ACTIVITY (4) | |
| PERJURY (5–6) | |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |
| None | |

**Highest Offense Level (Terminated)**

None

**Complaints**                                      **Disposition**

None

---

**Plaintiff**

**USA**                                        represented by   **John S. Davis**
US Attorney's Office (NH)
James C Cleveland Federal Bldg
53 Pleasant St, 4th Flr
Concord, NH 03301
603 230−2574
Email: john.davis8@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 07/02/2020 | | | Arrest (Removal) of Ghislaine Maxwell.(kad) (Entered: 07/02/2020) |
| 07/02/2020 | 1 | | COPY of Warrant and Indictment from Southern District of New York (White Plains, NY), Case No. 20 CR 330. (kad) (Entered: 07/02/2020) |
| 07/02/2020 | | | NOTICE OF HEARING as to Ghislaine Maxwell. Removal Hearing via Video Conference set for 7/2/2020 03:30 PM before Magistrate Judge Andrea K. Johnstone. (kad) (Entered: 07/02/2020) |
| 07/02/2020 | 2 | | Public Access Findings as to Ghislaine Maxwell. So Ordered by Magistrate Judge Andrea K. Johnstone. (bt) (Entered: 07/02/2020) |
| 07/02/2020 | | | Minute Entry for proceedings held before Magistrate Judge Andrea K. Johnstone: REMOVAL HEARING as to Ghislaine Maxwell held on 7/2/2020. The court found the defendant knowingly and voluntarily waived and in−court hearing. Defendant: advised of rights and charges, waived identity hearing. Detention hearing to be held in prosecuting district. (Court Reporter: Susan Bateman) (Govt Atty: Alison Moe, John Davis) (Defts Atty: Lawrence Vogelman) (USP: Janice Bernard)(Total Hearing Time: 17 min.) (kad) (Entered: 07/06/2020) |
| 07/02/2020 | 3 | | **COMMITMENT TO ANOTHER DISTRICT as to Ghislaine Maxwell. Defendant committed to District of Southern District of New York. So Ordered by Magistrate Judge Andrea K. Johnstone. (kad)** (Entered: 07/06/2020) |

Mod AO 442 (09/13) Arrest Warrant      AUSA Name & Telno: Alison Moe, 212-637-2225

# UNITED STATES DISTRICT COURT

for the

## Southern District of New York

United States of America
v.

Ghislaine Maxwell

*Defendant*

)
)
)
)
)
)

# 20 CR 330

Case No.

# ARREST WARRANT

To:     Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*     Ghislaine Maxwell                                                                                    ,
who is accused of an offense or violation based on the following document filed with the court:

☑ Indictment     ❑ Superseding Indictment     ❑ Information     ❑ Superseding Information     ❑ Complaint
❑ Probation Violation Petition     ❑ Supervised Release Violation Petition     ❑ Violation Notice     ❑ Order of the Court

This offense is briefly described as follows:

Title 18, United States Code, Section 371 (conspiracy to entice minors)
Title 18, United States Code, Sections 2422 and 2 (enticement of a minor)
Title 18, United States Code, Section 371 (conspiracy to transport minors)
Title 18, United States Code, Sections 2423(a) and 2 (transportation of a minor)
Title 18, United States Code, Section 1623 (perjury)

Date:     06/29/2020

_____
*Issuing officer's signature*

City and state:     White Plains, NY

Hon. Lisa Margaret Smith, U.S. Magistrate Judge
*Printed name and title*

| Return | | |
|---|---|---|
| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ at *(city and state)* _____ . | | |
| Date: _____ | _____ *Arresting officer's signature* | |
| | _____ *Printed name and title* | |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - x
                        :     SEALED
UNITED STATES OF AMERICA    :     INDICTMENT
                        :
         - v. -         :     20 Cr.
                        :
GHISLAINE MAXWELL,       :    **<span style="color:red">20 Cr. 330</span>**
                        :
       Defendant.     :
                        :
- - - - - - - - - - - - - - - x

### COUNT ONE
**(Conspiracy to Entice Minors to Travel to Engage in Illegal Sex Acts)**

The Grand Jury charges:

### OVERVIEW

1.   The charges set forth herein stem from the role of GHISLAINE MAXWELL, the defendant, in the sexual exploitation and abuse of multiple minor girls by Jeffrey Epstein.  In particular, from at least in or about 1994, up to and including at least in or about 1997, MAXWELL assisted, facilitated, and contributed to Jeffrey Epstein's abuse of minor girls by, among other things, helping Epstein to recruit, groom, and ultimately abuse victims known to MAXWELL and Epstein to be under the age of 18.  The victims were as young as 14 years old when they were groomed and abused by MAXWELL and Epstein, both of whom knew that certain victims were in fact under the age of 18.

2.   As a part and in furtherance of their scheme to abuse minor victims, GHISLAINE MAXWELL, the defendant, and Jeffrey Epstein enticed and caused minor victims to travel to

Epstein's residences in different states, which MAXWELL knew and intended would result in their grooming for and subjection to sexual abuse. Moreover, in an effort to conceal her crimes, MAXWELL repeatedly lied when questioned about her conduct, including in relation to some of the minor victims described herein, when providing testimony under oath in 2016.

## FACTUAL BACKGROUND

3.   During the time periods charged in this Indictment, GHISLAINE MAXWELL, the defendant, had a personal and professional relationship with Jeffrey Epstein and was among his closest associates. In particular, between in or about 1994 and in or about 1997, MAXWELL was in an intimate relationship with Epstein and also was paid by Epstein to manage his various properties. Over the course of their relationship, MAXWELL and Epstein were photographed together on multiple occasions, including in the below image:



4.   Beginning in at least 1994, GHISLAINE MAXWELL, the defendant, enticed and groomed multiple minor girls to engage in sex acts with Jeffrey Epstein, through a variety of means and methods, including but not limited to the following:

a.   MAXWELL first attempted to befriend some of Epstein's minor victims prior to their abuse, including by asking the victims about their lives, their schools, and their families.  MAXWELL and Epstein would spend time building friendships with minor victims by, for example, taking minor victims to the movies or shopping.  Some of these outings would involve MAXWELL and Epstein spending time together with a minor victim, while some would involve MAXWELL or Epstein spending time alone with a minor victim.

b.   Having developed a rapport with a victim, MAXWELL would try to normalize sexual abuse for a minor victim by, among other things, discussing sexual topics, undressing in front of the victim, being present when a minor victim was undressed, and/or being present for sex acts involving the minor victim and Epstein.

c.   MAXWELL'S presence during minor victims' interactions with Epstein, including interactions where the minor victim was undressed or that involved sex acts with Epstein, helped put the victims at ease because an adult woman was present.  For example, in some instances, MAXWELL would

massage Epstein in front of a minor victim.  In other instances, MAXWELL encouraged minor victims to provide massages to Epstein, including sexualized massages during which a minor victim would be fully or partially nude.  Many of those massages resulted in Epstein sexually abusing the minor victims.

d.   In addition, Epstein offered to help some minor victims by paying for travel and/or educational opportunities, and MAXWELL encouraged certain victims to accept Epstein's assistance.  As a result, victims were made to feel indebted and believed that MAXWELL and Epstein were trying to help them.

e.   Through this process, MAXWELL and Epstein enticed victims to engage in sexual activity with Epstein.  In some instances, MAXWELL was present for and participated in the sexual abuse of minor victims.  Some such incidents occurred in the context of massages, which developed into sexual encounters.

5.   GHISLAINE MAXWELL, the defendant, facilitated Jeffrey Epstein's access to minor victims knowing that he had a sexual preference for underage girls and that he intended to engage in sexual activity with those victims.  Epstein's resulting abuse of minor victims included, among other things, touching a victim's breast, touching a victim's genitals, placing a sex toy such as a vibrator on a victim's genitals,

4

directing a victim to touch Epstein while he masturbated, and directing a victim to touch Epstein's genitals.

### MAXWELL AND EPSTEIN'S VICTIMS

6.    Between approximately in or about 1994 and in or about 1997, GHISLAINE MAXWELL, the defendant, facilitated Jeffrey Epstein's access to minor victims by, among other things, inducing and enticing, and aiding and abetting the inducement and enticement of, multiple minor victims. Victims were groomed and/or abused at multiple locations, including the following:

a.    A a multi-story private residence on the Upper East Side of Manhattan, New York owned by Epstein (the "New York Residence"), which is depicted in the following photograph:



b.   An estate in Palm Beach, Florida owned by Epstein (the "Palm Beach Residence"), which is depicted in the following photograph:



c.   A ranch in Santa Fe, New Mexico owned by Epstein (the "New Mexico Residence"), which is depicted in the following photograph:



          d.    MAXWELL's personal residence in London,

England.

          7.    Among the victims induced or enticed by GHISLAINE

MAXWELL, the defendant, were minor victims identified herein as

Minor Victim-1, Minor Victim-2, and Minor Victim-3.   In

particular, and during time periods relevant to this Indictment,

MAXWELL engaged in the following acts, among others, with

respect to minor victims:

          a.    MAXWELL met Minor Victim-1 when Minor

Victim-1 was approximately 14 years old.   MAXWELL subsequently

interacted with Minor Victim-1 on multiple occasions at

Epstein's residences, knowing that Minor Victim-1 was under the

age of 18 at the time.   During these interactions, which took

place between approximately 1994 and 1997, MAXWELL groomed Minor

Victim-1 to engage in sexual acts with Epstein through multiple

means.   First, MAXWELL and Epstein attempted to befriend Minor

Victim-1, taking her to the movies and on shopping trips.

MAXWELL also asked Minor Victim-1 about school, her classes, her

family, and other aspects of her life.   MAXWELL then sought to

normalize inappropriate and abusive conduct by, among other

things, undressing in front of Minor Victim-1 and being present

when Minor Victim-1 undressed in front of Epstein.   Within the

first year after MAXWELL and Epstein met Minor Victim-1, Epstein

began sexually abusing Minor Victim-1.   MAXWELL was present for

and involved in some of this abuse.  In particular, MAXWELL involved Minor Victim-1 in group sexualized massages of Epstein. During those group sexualized massages, MAXWELL and/or Minor Victim-1 would engage in sex acts with Epstein.  Epstein and MAXWELL both encouraged Minor Victim-1 to travel to Epstein's residences in both New York and Florida.  As a result, Minor Victim-1 was sexually abused by Epstein in both New York and Florida.  Minor Victim-1 was enticed to travel across state lines for the purpose of sexual encounters with Epstein, and MAXWELL was aware that Epstein engaged in sexual activity with Minor Victim-1 after Minor-Victim-1 traveled to Epstein's properties, including in the context of a sexualized massage.

b.   MAXWELL interacted with Minor Victim-2 on at least one occasion in or about 1996 at Epstein's residence in New Mexico when Minor Victim-2 was under the age of 18.  Minor Victim-2 had flown into New Mexico from out of state at Epstein's invitation for the purpose of being groomed for and/or subjected to acts of sexual abuse.  MAXWELL knew that Minor Victim-2 was under the age of 18 at the time.  While in New Mexico, MAXWELL and Epstein took Minor Victim-2 to a movie and MAXWELL took Minor Victim-2 shopping.  MAXWELL also discussed Minor Victim-2's school, classes, and family with Minor Victim-2.  In New Mexico, MAXWELL began her efforts to groom Minor Victim-2 for abuse by Epstein by, among other things, providing

an unsolicited massage to Minor Victim-2, during which Minor

Victim-2 was topless.  MAXWELL also encouraged Minor Victim-2 to

massage Epstein.

         c.    MAXWELL groomed and befriended Minor

Victim-3 in London, England between approximately 1994 and 1995,

including during a period of time in which MAXWELL knew that

Minor Victim-3 was under the age of 18.  Among other things,

MAXWELL discussed Minor Victim-3's life and family with Minor

Victim-3.  MAXWELL introduced Minor Victim-3 to Epstein and

arranged for multiple interactions between Minor Victim-3 and

Epstein.  During those interactions, MAXWELL encouraged Minor

Victim-3 to massage Epstein, knowing that Epstein would engage

in sex acts with Minor Victim-3 during those massages.  Minor

Victim-3 provided Epstein with the requested massages, and

during those massages, Epstein sexually abused Minor Victim-3.

MAXWELL was aware that Epstein engaged in sexual activity with

Minor Victim-3 on multiple occasions, including at times when

Minor Victim-3 was under the age of 18, including in the context

of a sexualized massage.

### MAXWELL'S EFFORTS TO CONCEAL HER CONDUCT

        8.    In or around 2016, in the context of a deposition

as part of civil litigation, GHISLAINE MAXWELL, the defendant,

repeatedly provided false and perjurious statements, under oath,

regarding, among other subjects, her role in facilitating the

abuse of minor victims by Jeffrey Epstein, including some of the
specific events and acts of abuse detailed above.

## STATUTORY ALLEGATIONS

9.   From at least in or about 1994, up to and
including in or about 1997, in the Southern District of New York
and elsewhere, GHISLAINE MAXWELL, the defendant, Jeffrey
Epstein, and others known and unknown, willfully and knowingly
did combine, conspire, confederate, and agree together and with
each other to commit an offense against the United States, to
wit, enticement, in violation of Title 18, United States Code,
Section 2422.

10.   It was a part and object of the conspiracy that
GHISLAINE MAXWELL, the defendant, Jeffrey Epstein, and others
known and unknown, would and did knowingly persuade, induce,
entice, and coerce one and more individuals to travel in
interstate and foreign commerce, to engage in sexual activity
for which a person can be charged with a criminal offense, in
violation of Title 18, United States Code, Section 2422.

### Overt Acts

11.   In furtherance of the conspiracy and to effect
the illegal object thereof, the following overt acts, among
others, were committed in the Southern District of New York and
elsewhere:

a.   Between in or about 1994 and in or about 1997, when Minor Victim-1 was under the age of 18, MAXWELL participated in multiple group sexual encounters with Epstein and Minor Victim-1 in New York and Florida.

b.   In or about 1996, when Minor Victim-1 was under the age of 18, Minor Victim-1 was enticed to travel from Florida to New York for purposes of sexually abusing her at the New York Residence, in violation of New York Penal Law, Section 130.55.

c.   In or about 1996, when Minor Victim-2 was under the age of 18, MAXWELL provided Minor Victim-2 with an unsolicited massage in New Mexico, during which Minor Victim-2 was topless.

d.   Between in or about 1994 and in or about 1995, when Minor Victim-3 was under the age of 18, MAXWELL encouraged Minor Victim-3 to provide massages to Epstein in London, England, knowing that Epstein intended to sexually abuse Minor Victim-3 during those massages.

(Title 18, United States Code, Section 371.)

## COUNT TWO
**(Enticement of a Minor to Travel to Engage in Illegal Sex Acts)**

The Grand Jury further charges:

12.   The allegations contained in paragraphs 1 through 8 of this Indictment are repeated and realleged as if fully set forth within.

13.  From at least in or about 1994, up to and including in or about 1997, in the Southern District of New York and elsewhere, GHISLAINE MAXWELL, the defendant, knowingly did persuade, induce, entice, and coerce an individual to travel in interstate and foreign commerce to engage in sexual activity for which a person can be charged with a criminal offense, and attempted to do the same, and aided and abetted the same, to wit, MAXWELL persuaded, induced, enticed, and coerced Minor Victim-1 to travel from Florida to New York, New York on multiple occasions with the intention that Minor Victim-1 would engage in one or more sex acts with Jeffrey Epstein, in violation of New York Penal Law, Section 130.55.

(Title 18, United States Code, Sections 2422 and 2.)

## COUNT THREE
### (Conspiracy to Transport Minors with Intent to Engage in Criminal Sexual Activity)

The Grand Jury further charges:

14.  The allegations contained in paragraphs 1 through 8 of this Indictment are repeated and realleged as if fully set forth within.

15.  From at least in or about 1994, up to and including in or about 1997, in the Southern District of New York and elsewhere, GHISLAINE MAXWELL, the defendant, Jeffrey Epstein, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit an offense against the United States, to

wit, transportation of minors, in violation of Title 18, United States Code, Section 2423(a).

16.   It was a part and object of the conspiracy that GHISLAINE MAXWELL, the defendant, Jeffrey Epstein, and others known and unknown, would and did, knowingly transport an individual who had not attained the age of 18 in interstate and foreign commerce, with intent that the individual engage in sexual activity for which a person can be charged with a criminal offense, in violation of Title 18, United States Code, Section 2423(a).

<u>Overt Acts</u>

17.   In furtherance of the conspiracy and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.   Between in or about 1994 and in or about 1997, when Minor Victim-1 was under the age of 18, MAXWELL participated in multiple group sexual encounters with EPSTEIN and Minor Victim-1 in New York and Florida.

b.   In or about 1996, when Minor Victim-1 was under the age of 18, Minor Victim-1 was enticed to travel from Florida to New York for purposes of sexually abusing her at the

New York Residence, in violation of New York Penal Law, Section

130.55.

         c.   In or about 1996, when Minor Victim-2 was

under the age of 18, MAXWELL provided Minor Victim-2 with an

unsolicited massage in New Mexico, during which Minor Victim-2

was topless.

         d.   Between in or about 1994 and in or about

1995, when Minor Victim-3 was under the age of 18, MAXWELL

encouraged Minor Victim-3 to provide massages to Epstein in

London, England, knowing that Epstein intended to sexually abuse

Minor Victim-3 during those massages.

         (Title 18, United States Code, Section 371.)

### COUNT FOUR
**(Transportation of a Minor with Intent to
Engage in Criminal Sexual Activity)**

     The Grand Jury further charges:

     18.  The allegations contained in paragraphs 1

through 8 of this Indictment are repeated and realleged as if

fully set forth within.

     19.  From at least in or about 1994, up to and

including in or about 1997, in the Southern District of New York

and elsewhere, GHISLAINE MAXWELL, the defendant, knowingly did

transport an individual who had not attained the age of 18 in

interstate and foreign commerce, with the intent that the

individual engage in sexual activity for which a person can be

charged with a criminal offense, and attempted to do so, and

aided and abetted the same, to wit, MAXWELL arranged for Minor

Victim-1 to be transported from Florida to New York, New York on

multiple occasions with the intention that Minor Victim-1 would

engage in one or more sex acts with Jeffrey Epstein, in

violation of New York Penal Law, Section 130.55.

(Title 18, United States Code, Sections 2423(a) and 2.)

## COUNT FIVE
### (Perjury)

The Grand Jury further charges:

20.   The allegations contained in paragraphs 1

through 8 of this Indictment are repeated and realleged as if

fully set forth within.

21.   On or about April 22, 2016, in the Southern

District of New York, GHISLAINE MAXWELL, the defendant, having

taken an oath to testify truthfully in a deposition in

connection with a case then pending before the United States

District Court for the Southern District of New York under

docket number 15 Civ. 7344, knowingly made false material

declarations, to wit, MAXWELL gave the following underlined

false testimony:

Q.   Did Jeffrey Epstein have a scheme to recruit
     underage girls for sexual massages?  If you know.

A.   I don't know what you're talking about.

. . .

15

Q.   List all the people under the age of 18 that you
     interacted with at any of Jeffrey's properties?

A.   <u>I'm not aware of anybody that I interacted with,
     other than obviously [the plaintiff] who was 17
     at this point.</u>

(Title 18, United States Code, Section 1623.)

<u>**COUNT SIX**</u>
**(Perjury)**

The Grand Jury further charges:

22.   The allegations contained in paragraphs 1
through 8 of this Indictment are repeated and realleged as if
fully set forth within.

23.   On or about July 22, 2016, in the Southern
District of New York, GHISLAINE MAXWELL, the defendant, having
taken an oath to testify truthfully in a deposition in
connection with a case then pending before the United States
District Court for the Southern District of New York under
docket number 15 Civ. 7344, knowingly made false material
declarations, to wit, MAXWELL gave the following underlined
false testimony:

Q:   Were you aware of the presence of sex toys or
     devices used in sexual activities in Mr.
     Epstein's Palm Beach house?

A:   <u>No, not that I recall.</u> . . .

Q.   Do you know whether Mr. Epstein possessed sex
     toys or devices used in sexual activities?

A.   <u>No.</u>

. . .

Q.   Other than yourself and the blond and brunette
     that you have identified as having been involved
     in three-way sexual activities, with whom did Mr.
     Epstein have sexual activities?

A.   I wasn't aware that he was having sexual
     activities with anyone when I was with him other
     than myself.

Q.   I want to be sure that I'm clear.  Is it your
     testimony that in the 1990s and 2000s, you were
     not aware that Mr. Epstein was having sexual
     activities with anyone other than yourself and
     the blond and brunette on those few occasions
     when they were involved with you?

A.   That is my testimony, that is correct.


. . .


Q.   Is it your testimony that you've never given
     anybody a massage?

A.   I have not given anyone a massage.

Q.   You never gave Mr. Epstein a massage, is that
     your testimony?

A.   That is my testimony.

Q.   You never gave [Minor Victim-2] a massage is your
     testimony?

A.   I never gave [Minor Victim-2] a massage.

(Title 18, United States Code, Section 1623.)


_____        _____
FOREPERSON                             AUDREY STRAUSS
                                       Acting United States Attorney

17

Form No. USA-33s-274 (Ed. 9-25-58)

---

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

---

**UNITED STATES OF AMERICA**

v.

**GHISLAINE MAXWELL,**

**Defendant.**

---

### INDICTMENT

(18 U.S.C. §§ 371, 1623, 2422, 2423(a),
and 2)

---

AUDREY STRAUSS
Acting United States Attorney

---

Foreperson

---

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

United States of America

  v.              Case No. 20-mj-132-AJ-1

Ghislaine Maxwell

## Public Access Findings

### I. Background

  This hearing is taking place during the public health emergency caused by the COVID-19 outbreak.  All parties to this proceeding, including the court, are appearing remotely via video.  In light of the anticipated volume of public and media interest and the operational/capacity limitations of videoconference technology, public and media access to the proceeding will be via telephonic conference.  The court's protocols for this hearing are laid out in Standing Order 20-7 (Mar. 23, 2020).[1]  The court finds that conducting this hearing via video — under the unique circumstances presented by the COVID-19 pandemic — is the best way to ensure the safety of the litigants, court personnel, and the public at large.  All findings made in the court's prior standing orders are

---

[1] Standing Order 20-7 was extended to August 1, 2020 by Standing Order 20-21 (June 17, 2020).

incorporated herein.  See Standing Orders 20-5 (Mar. 20, 2020) and 20-21 (June 17, 2020).[2]

The hearing held today will be an initial appearance and removal hearing for defendant Ghislaine Maxwell.  Today's hearing has been noticed as a video hearing.  In the event defendant consents to proceed, the court makes the findings below.

Before convening this video/telephone hearing, the court carefully considered the defendant's Sixth Amendment right to public court proceedings and the public's and press's First Amendment rights to in-person access to such proceedings.  See Bucci v. United States, 662 F.3d 18, 22 (1st Cir. 2011) (citing Waller v. Georgia, 467 U.S. 39, 48 (1984)); Press-Enter. Co. v. Superior Court of California, Riverside Cty., 464 U.S. 501, 509-10 (1984).  This Order details my findings.

## II.  **Partial Rather Than Total Closure**

The court first finds that this video hearing constitutes a partial, rather than total, closure of these proceedings.  The court so finds because the goals of public access will still be achieved: this proceeding is not being held in secret and the public, including members of the press, maintains the

---

[2] All the court's Standing Orders regarding the COVID-19 outbreak can be found here: http://www.nhd.uscourts.gov/court-response-coronavirus-disease-covid-19.

opportunity to access this proceeding in real time.  See
Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 593-97
(1980) (Brennan, J., concurring) (discussing the functions of
public access to court proceedings, including ensuring that
procedural rights are respected and that justice is afforded
equally, maintaining public confidence in the administration of
justice, promoting accurate fact-finding, and enabling the
public to act as a check on judicial power); see also Bucci, 662
F.3d at 22 (discussing benefits of openness in criminal
proceedings).  Under the extraordinary circumstances presented
by the continuing COVID-19 pandemic, the court finds this
partial closure is necessary.

III. **Findings in Support of Necessity for this Partial Closure**

A. **First, the court finds that protecting the health and
   safety of the public and the parties to this proceeding
   from the spread of COVID-19 is a substantial interest that
   would be jeopardized and prejudiced if the court did not
   impose this partial closure.**

Since the first announced case in New Hampshire on March 2,
2020, the state has reported 5,802 confirmed cases of COVID-19.[3]
So far, 373 deaths have been attributed to the disease in this

---

[3] COVID-19, N.H. Dep't of Health and Human Servs.,
https://www.nh.gov/covid19/ (last visited 12:00 p.m. July 2,
2020); Explore the Data: Tracking COVID-19 in New Hampshire,
N.H. Pub. Radio, https://www.nhpr.org/post/updated-tracking-
covid-19-cases-and-testing-new-hampshire#stream/0 (last visited
12:00 p.m. July 2, 2020).

state.  Further, in New Hampshire approximately 3,475 people are being monitored for signs of COVID-19 infection, over 120,307 total tests have been reported (both positive and negative test results), and community-based transmission has been confirmed.[4] Nationally, the number of confirmed cases has grown to over 2,797,737, with 130,984 cases resulting in death.[5]

Given the contagious nature of the virus and the exponential growth in cases, COVID-19 presents an enormous danger to the health and safety of the public, including the litigants, security, and court personnel involved in this proceeding.  The court's interest in preventing the spread of COVID-19 and preserving the health of all hearing participants, including the public, is a weighty and substantial interest that would likely be prejudiced if the court were not to impose this partial closure.  See United States v. Smith, 426 F.3d 567, 572-73 (2d Cir. 2005) (finding that U.S. Marshal's policy after September 11th of requiring unknown visitors to court to produce photo identification constituted partial closure of courtroom

---

[4] COVID-19, N.H. Dep't of Health and Human Servs., https://www.nh.gov/covid19/ (last visited 12:00 p.m. July 2, 2020); Explore the Data: Tracking COVID-19 in New Hampshire, N.H. Pub. Radio, https://www.nhpr.org/post/updated-tracking-covid-19-cases-and-testing-new-hampshire#stream/0 (last visited 12:00 p.m. July 2, 2020).

[5] Real Clear Politics, https://www.realclearpolitics.com/ (last visited 12:45 p.m. July 2, 2020).

that was justified by substantial interest of promoting security
and preventing terrorism).

**B. Second, the court finds that this partial closure of court
proceedings is narrowly tailored to protect public health
and safety and is less restrictive than the court's current
in-court hearing protocols.**

   Allowing the public to access these proceedings through
telephone conference allows a large number (up to 500) of
members of the public to access the proceedings while, at the
same time, protecting the health of all involved by limiting the
potential exposure of the public, parties, and court staff to
COVID-19.

   Importantly, the court finds that, in light of the court's
current restrictions on the number of people permitted in the
courtroom, providing public telephonic access is less
restrictive than holding an in-person hearing which only a
limited number of people can attend.  Further, via telephone,
even individuals who would have otherwise been prohibited from
entering the courthouse — for example, people who have tested
positive for COVID-19 — now have access (even though virtual) to
the proceedings.  See Standing Order 20-9 (Mar. 20, 2020)
(prohibiting certain individuals from entering the courthouse,
including people diagnosed with or exposed to someone diagnosed
with COVID-19).  Providing the public access to this proceeding
via telephone is the least restrictive means of protecting the

substantial interest of public health and safety.  See United
States v. Alimehmeti, 284 F. Supp. 3d 477, 490 (S.D.N.Y. 2018)
(granting partial closure of courtroom to protect identity of
undercover agents: courtroom was closed to public during
undercover agents' testimony but audio of testimony was live-
streamed into different courtroom during partial closure and
transcripts of testimony were made available to public
promptly).

   **C. Third, the court has considered reasonable alternatives to
   this partial closure.**

   The court has considered alternatives to this partial
closure and finds they are neither reasonable nor feasible under
the circumstances of the COVID-19 pandemic and this case,
particularly the necessity that this hearing be conducted
promptly.

**IV.  Conclusion**

   In sum, the court finds that in this case a partial closure
of court proceedings is necessary in that today's hearing will
be conducted by video and telephone conference.  This partial
closure is justified by the substantial interest of protecting
public health and safety from the spread of COVID-19 and is
narrowly tailored to protect that interest.  The public
maintains the opportunity to access these proceedings in full by
telephone.

**SO ORDERED.**

_____
Andrea K. Johnstone
United States Magistrate Judge

July 2, 2020

cc:  Counsel of record

AO 94 (Rev. 06/09) Commitment to Another District (NH 06/09)

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

United States                                        Case No. 20-mj-132-01-AJ

v.

Ghislaine Maxwell                          Charging District Case No. 20 CR 330


## COMMITMENT TO ANOTHER DISTRICT

The defendant has been charged by way of with a violation of , alleged to have been

committed in the Southern District of New York.

Brief Description of Charge(s):

18 U.S.C. 371 CONSPIRACY TO ENTICE MINORS TO TRAVEL TO ENGAGE IN
ILLEGAL SEX ACTS

18 U.S.C. 2422 and 2 ENTICEMENT OF A MINOR TO TRAVEL TO ENGAGE IN ILLEGAL
SEX ACTS

18 U.S.C. 371 CONSPIRACY TO TRANSPORT MINORS WITH INTENT TO ENGAGE IN
CRIMINAL SEXUAL ACTIVITY

18 U.S.C. 2423(a) and 2 TRANSPORTATION OF A MINOR WITH INTENT TO ENGAGE IN
CRIMINAL SEXUAL ACTIVITY

PERJURY


CURRENT BOND STATUS:

☐ Bail fixed  $_____ and conditions were not met.
☐ Government moved for detention and defendant detained after hearing in District of
   Arrest.
☐ Government moved for detention and defendant detained pending detention hearing
   in District of Offense.
☐ Other (specify):


REPRESENTATION: Lawrence Vogelman, Esq.


INTERPRETER REQUIRED: No

20-mj-132-01-AJ USA v. Maxwell

AO 94 (Rev. 06/09) Commitment to Another District (NH 06/09)

The United States marshal must transport the defendant, together with a copy of this order, to the charging district and deliver the defendant to the United States marshal for that district, or to another officer authorized to receive the defendant.  The marshal or officer in the charging district should immediately notify the United States attorney and the clerk of court for that district of the defendant's arrival so that further proceedings may be promptly scheduled. The clerk of this district must promptly transmit the papers and any bail to the charging district.

SO ORDERED.

_Andrea K. Johnstone_
Andrea K. Johnstone
United States Magistrate Judge

July 2, 2020

| RETURN | | |
|---|---|---|
| THIS COMMITMENT WAS RECEIVED AND EXECUTED AS FOLLOWS: | | |
| DATE COMMITMENT ORDER RECEIVED | PLACE OF COMMITMENT | DATE DEFENDANT COMMITTED |
| DATE | UNITED STATES MARSHAL | (BY) DEPUTY MARSHAL |

```
MIME-Version:1.0
From:ecf_bounce@nhd.uscourts.gov
To:nef@nhd.uscourts.gov
Bcc:
--Case Participants: John S. Davis (caseview.ecf@usdoj.gov, john.davis8@usdoj.gov,
kristina.mcnamara@usdoj.gov, usanh.ecfcriminal@usdoj.gov, usanh.ecfdocket@usdoj.gov)
--Non Case Participants: US Marshal (brenda.mikelson2@usdoj.gov,
eugene.robinson2@usdoj.gov, kathleen.renaud@usdoj.gov, kimberly.dow@usdoj.gov,
wanda.dechaine@usdoj.gov), US Probation (nhpdb_cmecf@nhp.uscourts.gov)
--No Notice Sent:

Message-Id:2213049@nhd.uscourts.gov
Subject:Activity in Case 1:20-mj-00132-AJ USA v. Maxwell Notice of Hearing
```
Content–Type: text/html

# U.S. District Court

## District of New Hampshire

## Notice of Electronic Filing

The following transaction was entered on 7/2/2020 at 12:09 PM EDT and filed on 7/2/2020

| | |
|---|---|
| **Case Name:** | USA v. Maxwell |
| **Case Number:** | 1:20–mj–00132–AJ |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
 **NOTICE OF HEARING as to Ghislaine Maxwell. Removal Hearing via Video Conference set for 7/2/2020 03:30 PM before Magistrate Judge Andrea K. Johnstone. (kad)**

**1:20–mj–00132–AJ–1 Notice has been electronically mailed to:**

John S. Davis &nbsp &nbsp john.davis8@usdoj.gov, CaseView.ECF@usdoj.gov,
kristina.mcnamara@usdoj.gov, USANH.ECFCriminal@usdoj.gov, USANH.ECFDocket@usdoj.gov

**1:20–mj–00132–AJ–1 Notice, to the extent appropriate, must be delivered conventionally to:**

```
MIME-Version:1.0
From:ecf_bounce@nhd.uscourts.gov
To:nef@nhd.uscourts.gov
Bcc:
--Case Participants: John S. Davis (caseview.ecf@usdoj.gov, john.davis8@usdoj.gov,
kristina.mcnamara@usdoj.gov, usanh.ecfcriminal@usdoj.gov, usanh.ecfdocket@usdoj.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:2213529@nhd.uscourts.gov
Subject:Activity in Case 1:20-mj-00132-AJ USA v. Maxwell Removal Hearing
Content-Type: text/html
```

### U.S. District Court

### District of New Hampshire

## Notice of Electronic Filing

The following transaction was entered on 7/6/2020 at 9:45 AM EDT and filed on 7/2/2020

| | |
|---|---|
| **Case Name:** | USA v. Maxwell |
| **Case Number:** | 1:20–mj–00132–AJ |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
**Minute Entry for proceedings held before Magistrate Judge Andrea K. Johnstone: REMOVAL HEARING as to Ghislaine Maxwell held on 7/2/2020. The court found the defendant knowingly and voluntarily waived and in–court hearing. Defendant: advised of rights and charges, waived identity hearing. Detention hearing to be held in prosecuting district. (Court Reporter: Susan Bateman) (Govt Atty: Alison Moe, John Davis) (Defts Atty: Lawrence Vogelman) (USP: Janice Bernard)(Total Hearing Time: 17 min.) (kad)**

**1:20–mj–00132–AJ–1 Notice has been electronically mailed to:**

John S. Davis &nbsp &nbsp john.davis8@usdoj.gov, CaseView.ECF@usdoj.gov, kristina.mcnamara@usdoj.gov, USANH.ECFCriminal@usdoj.gov, USANH.ECFDocket@usdoj.gov

**1:20–mj–00132–AJ–1 Notice, to the extent appropriate, must be delivered conventionally to:**

```
MIME-Version:1.0
From:ecf_bounce@nhd.uscourts.gov
To:nef@nhd.uscourts.gov
Bcc:
--Case Participants:
--Non Case Participants:
--No Notice Sent:

Message-Id:2212948@nhd.uscourts.gov
Subject:Activity in Case 20-132 Sealed v. Sealed (Redacted Notice)
Content-Type: text/html
```

*NOTE: This docket entry (or case) is sealed, no email notices have been sent.*

## U.S. District Court

## District of New Hampshire

## Notice of Electronic Filing

The following transaction was entered on 7/2/2020 at 9:45 AM EDT and filed on 7/2/2020

| | |
|---|---|
| **Case Name:** | USA v. Maxwell |
| **Case Number:** | 1:20–mj–00132–AJ *SEALED* |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
**Arrest (Removal) of Ghislaine Maxwell.(kad)**

**1:20–mj–00132–AJ *SEALED*–1 No electronic public notice will be sent because the case/entry is sealed.**